UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WESTERN SURETY COMPANY,<br><br>                          Plaintiff(s),<br><br>        v.<br><br>S3H, et al.,<br><br>                          Defendant(s). | Case No. 2:14-CV-2056 JCM (PAL)<br><br>ORDER |

Presently before the court is plaintiff Western Surety Company's ("Western") motion for summary judgment. (ECF No. 46). Defendants S3H, Inc., Vatche Sarkoyan, and Arlene Sarkoyan filed a response (ECF No. 51), and plaintiff filed a reply. (ECF No. 54).

**I.     Background**

On August 6, 2011, and February 1, 2012, Hoffman Construction Company of Oregon ("Hoffman") and defendant S3H entered into two subcontracts, where Hoffman hired defendant S3H as a subcontractor in the construction of the Intel Corporation DIX project ("project"). (ECF No. 46-19 at 2). The subcontracts required defendant S3H and Hoffman to resolve all disputes through the American Arbitration Association ("AAA"). (*Id*.).

Plaintiff Western provided payment and performance bonds for the project: defendant S3H was the principal and Hoffman was the obligee. (*Id*.). The performance bond states that "any finding, ruling, determination or decision made in accordance with said Subcontract shall be final and binding on the Surety." (ECF No. 46-3 at 6). However, all of these duties on plaintiff became void if defendant S3H performed under the subcontract or indemnified Hoffman. (*Id*.). Later, on January 5, 2007, defendant S3H entered into a general agreement of indemnity ("GIA") with plaintiff and other businesses. (ECF No. 46-1). The GIA states that defendants will indemnify

**James C. Mahan**
**U.S. District Judge**

1  plaintiff for expenses, including attorney's fees, that result from having "executed, or procured the
2  execution of such bonds." (*Id.* at ¶ 2). The GIA allows the agreement to "be terminated by the
3  Indemnitors, or any one or more of the parties so designated, upon written notice sent by the
4  registered mail to the Office of the Company." (ECF No. 46-1 at Art. 15).

5        When disputes arose, defendant S3H and Hoffman entered into an arbitration panel
6  agreement and agreed to submit to binding arbitration. (ECF No. 46-6). Throughout the course of
7  the arbitration, Hoffman made demands against plaintiff for a termination back-charge amounting
8  to over $11,000,000. *See* (ECF No. 46-15). In February 2014, plaintiff, Hoffman, and defendant
9  S3H entered into an amended arbitration panel agreement ("AAPA"), and plaintiff joined the
10 arbitration. (ECF No. 46-12); (ECF No. 46 at ¶ 6); (ECF No. 51 at 2); *See* (ECF No. 46-16). The
11 AAPA states that "[e]ach party shall be responsible for and bear the costs of its own attorney's
12 fees and expenses and an equal portion of the panel's costs and expenses." (ECF No. 46-12 at 2).
13 Furthermore, the AAPA includes a choice of law provision selecting ORS 36.600 through 36.740
14 as governing law. (*Id* at 5).

15       On October 19, 2014, the AAA issued a final decision, ordering Hoffman to pay
16 $7,664,413.00 to defendant S3H as well as holding that defendant S3H and plaintiff did not owe
17 anything to Hoffman. (ECF No. 46-19 at 20–21). The AAA also held that, pursuant to the AAPA,
18 each party must bear its own attorney's fees. (*Id.* at 21).

19       After the arbitration was complete, plaintiff requested payments from defendants
20 amounting to $748,843.85 in arbitration costs as well as $297,103.34 that plaintiff paid out in
21 claims on the bond. (ECF No. 46-20). Defendants paid plaintiff for the claims on the bond but did
22 not cover plaintiff's arbitration costs. (ECF No. 46-21). Subsequently, plaintiff initiated this
23 lawsuit in order to recovery attorney's fees and other arbitration-related expenses. (ECF No. 1).

24     **II.**    **Legal Standard**

25       The Federal Rules of Civil Procedure provide for summary adjudication when the
26 pleadings, depositions, answers to interrogatories, and admissions on file, together with the
27 affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant
28 is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary

**James C. Mahan**
**U.S. District Judge**

- 2 -

judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

**James C. Mahan**
**U.S. District Judge**

At summary judgment, a court's function is not to weight the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.     Discussion

As a threshold matter, while both parties cite to and provide depositions discussing what the parties knew and deliberated at the time they signed the AAPA, neither party properly adhered to all of the authentication requirements as clearly set forth in Rules 901 and 902 of the Federal Rules of Evidence. Because the summary-judgment procedure is the pretrial functional equivalent of a directed-verdict motion, it requires the same caliber of evidence that would be admitted at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n. 11 (1983)). The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment. *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). Simply attaching evidence is insufficient. *Id.* If a party fails to authenticate evidence in support of its position, the court may exclude it. *Id.* When reviewing this motion, evidence that was not properly authenticated, including the attached depositions, was not considered.

Plaintiff argues that the GIA requires defendants to bear plaintiff's arbitration-related costs, expenses, and attorney's fees. (ECF No. 46 at 8–13). Defendants argue that the AAPA, subcontract, and performance bond waive plaintiff's right to indemnification for arbitration-related costs, expenses, and attorney's fees. (ECF No. 51 at 7–13).

The goal of contract interpretation is to give effect to the parties' mutual intentions. *Pioneer Title Ins. & Trust Co. v. Cantrell*, 286 P.2d 261, 263 (Nev. 1955) (quoting *Caruso v. John Hancock Mut. Life Ins. Co.*, 57 A.2d 359, 360 (N.J.L. 1948) ("The law will not make a better contract for the parties than they themselves have seen fit to enter into....")). A document that is "clear on its face [ ] will be construed from the written language and enforced as written." *Sandy Valley Assocs.*

**James C. Mahan**
**U.S. District Judge**

- 4 -

*v. Sky Ranch Estate Owners Ass'n,* 35 P.3d 964, 967 (Nev. 2001) (citing *Ellison v. C.S.A.A.,* 797 P.2d 975, 977 (Nev. 1990)). A contract is ambiguous when it is "reasonably susceptible to different constructions or interpretations." *Agric. Aviation Eng'g Co. v. Bd. of Clark Cnty. Comm'rs,* 794 P.2d 710, 712 (Nev. 1990). However, ambiguity does not arise simply because the parties disagree on how to interpret their contract. *Parman v. Petricciani*, 272 P.2d 492, 493–94 (Nev. 1954). Rather, "an ambiguous contract is an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning." *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013) (citing *Hampton v. Ford Motor Co.,* 561 F.3d 709, 714 (7th Cir. 2009) (quotes omitted)).

The AAPA states that "[e]ach party shall be responsible for and bear the cost of its own attorney's fees and expenses." (ECF No. 46-12 at Art. 1.7). The AAPA further states that arbitration is "the sole mechanism for resolving all disputes arising from and related to the Bonds." (*Id*. at Art. 3.1). The parties before the court provide competing interpretations of these provisions. Plaintiff claims that the AAPA has a limited scope and applies only to disputes before the arbitration panel and, thus, preserves the contractual obligations that arise from the GIA. (ECF Nos. 46, 54). Defendants claim that the AAPA overrides the GIA in this instance and relieves the defendants' contractual obligations to indemnify plaintiff. (ECF No. 51).

Plaintiff does not present sufficient evidence for the court to grant summary judgment in its favor. It is a well-settled tenet of contract law that a latter-signed contract between parties on the same subject modifies a pre-existing contract. *See, e.g.,* Restatement (Second) of Contracts § 89 (1981); 1 Construction Law Digests § 6:9. Plaintiff signed and consented to the AAPA in February 2014, almost seven years after the parties signed the GIA. The AAPA clearly stated that "each party shall be responsible for and bear the costs of its own attorneys fees and expenses…." (ECF No. 51, Exh. 12).

Furthermore, plaintiff knowingly and voluntarily entered into the AAPA which clearly stated that the agreement intended to "create the sole mechanism for resolving all disputes arising from and related to the bond." (*Id.*). By signing the AAPA, plaintiff affirmed its responsibility for payment of arbitration-related attorney's fees, costs, and expenses. Although the GIA states that it

can be terminated only "upon written notice sent by registered mail to the Office of the Company," a party may agree to subsequently modify or discharge that agreement. *See, e.g.*, *Silver Dollar Club v. Cosgriff Neon Co.*, 389 P.2d 923, 924 (Nev. 1964). If plaintiff wanted the GIA to alter or override the obligations set forth in the AAPA, it should have executed contractual amendments or other documents clarifying the status of defendants' duty to indemnify plaintiff.

Plaintiff does not provide sufficient evidence at this time to demonstrate that it did not intend to alter indemnity obligations through the AAPA in this manner. Therefore, the court denies plaintiff's motion for summary judgment.

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Western Surety Company's motion for summary judgment (ECF No. 46), be, and the same hereby is, DENIED.

DATED August 3, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 6 -